## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| JULIE VOEKS, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 19-cv-584 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| MIDLAND CREDIT MANAGEMENT INC. and MIDLAND FUNDING LLC, | **Jury Trial Demanded** |
| Defendants. | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION

2.      The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.      Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5.      Defendant Midland Credit Management, Inc. ("MCM") is a foreign business corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

6.     MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7.     MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Midland is a debt collector as defined in 15 U.S.C. § 1692a.

8.     Defendant Midland Funding, LLC ("Midland Funding") is a limited liability company with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

9.     Midland Funding is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time Midland acquires them.

10.    The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

11.    The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 371 (3d Cir. 2018) ("Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the liens prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th

Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 882-84 (N.D. Ill. 2018).

12.     The primary purpose of Midland Funding's business, and Midland Funding's principal purpose, is the collection of consumer debts. *See, e.g.*, *Trichell v. Midland Credit Mgmt.*, No. 18-cv-132, 2018 U.S. Dist. LEXIS 148700, at *6 (N.D. Al. Aug. 31, 2018) ("Defendants [MCM and Midland Funding] concede that they are debt collectors.").

13.     Midland Funding's website contains an "FAQ" webpage, which states:

**Who is Midland Funding?**

Midland Funding LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland Funding LLC purchases accounts with an unpaid balance when:

- An account has gone at least 180 days without making a payment, or
- Someone paid less than the minimum monthly payment for at least 180 days, and
- The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

14.     Midland Funding is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for Midland Funding's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

15.     According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Midland paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

3

16.     Midland Funding's role generally is to purchase and receive assignment of consumer debts that are in default at the time Midland Funding acquires them. Directly and indirectly through its affiliates, including Encore and MCM, Midland Funding uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts. The primary purpose of debt buyers like Midland Funding is debt collection. *See, e.g., Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

17.     Midland Funding uses debt collectors, including MCM, to collect allegedly defaulted debts that have been assigned to Midland Funding. Midland Funding uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

18.     Midland Funding by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that Midland Funding filed 875 small claims lawsuits against Wisconsin consumers in the month of December 2018 alone. When Midland Funding obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

19.     Another court in the Northern District of Illinois recently found that there was no genuine dispute about whether Midland Funding was a "debt collector" under the FDCPA. *Valenta v. Midland Funding, LLC*, No. 17-cv-6609, 2019 U.S. Dist. LEXIS 53902, at *7 (N.D.

4

Ill. Mar. 29, 2019) ("MF has left no doubt that debt collection is its lifeblood, so the Court can only conclude that it is a 'debt collector' under the FDCPA.").

20.     Midland Funding is a debt collector as defined in 15 U.S.C. § 1692a. *Tepper*, 898 F.3d at 371; *Trichell*, 2018 U.S. Dist. LEXIS 148700, at *6.

21.     A company meeting the definition of a "debt collector" under the FDCPA (here, Midland Funding) is vicariously liable for the actions of a second company (such as MCM) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (*citing Pollice v. National Tax Funding L.P.*, 225 F.3d 379, 404-06 (3d Cir. 2000); *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)).

## FACTS

### *Facts Related to Plaintiff's MCM Account Ending in 0437*

22.     On or about June 27, 2018, MCM mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Midland Funding and associated with an MCM Account Number ending in 0437. A copy of this letter is attached to this Complaint as Exhibit A.

23.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred through the use of a "Blain's Farm & Fleet" branded credit card, used exclusively for personal, family, and household purposes.

24.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

25.     Upon information and belief, Exhibit A is a form debt collection letter, used by Defendants to attempt to collect alleged debts.

5

26.     Upon information and belief, <u>Exhibit A</u> was the first written communication MCM sent to Plaintiff regarding this alleged debt.

27.     The reverse side of <u>Exhibit A</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:



**Important Disclosure Information:**

Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

<u>Exhibit A</u>.

28.     The front page of <u>Exhibit A</u> contains the following header:

06-27-2018

Pre-Legal Department
(800) 939-2353
Sun-Th: 5am-9pm PT;
Fri-Sat: 5am-4:30pm PT;

Julie Voeks
517 E Rawson Ave
Oak Creek, WI 53154-1509

P9T119 010

INITIAL NOTICE

RE: Synchrony Bank   Blains Farm & Fleet
    Account Number:            1529
    MCM Account #:          0437

<u>Exhibit A</u>.

29.     The body in Exhibit A contains the following:

On 05-29-2018, your Synchrony Bank/Blains Farm & Fleet account was sold to Midland Funding LLC, which is now the sole owner of this debt. Midland Credit Management, Inc. ("MCM"), a debt collection company, will be collecting on, and servicing your account, on behalf of Midland Funding LLC.

This account has been transferred to MCM's Pre-Legal Department and this is a demand for full payment of $6,080.98. Please call our Pre-Legal Department at (800) 939-2353 by **08-11-2018** to resolve this account. In addition to the following information, please review your validation rights described on the back of this letter.

**What is the Pre-Legal Department?**
MCM's Pre-Legal Department is a specialty group that manages accounts MCM is considering forwarding to an attorney for possible litigation.

**Why would MCM forward your account to an attorney?**
MCM is considering forwarding this account to an attorney in your state for possible litigation. Upon receipt of this notice, please call (800) 939-2353 to discuss your options.

If we don't hear from you or receive payment by **08-11-2018**, we may proceed with forwarding this account to an attorney. If the account is forwarded to an attorney, this may result in a lawsuit against you.

**Why does this matter to you?**
It is in both of our interest to resolve this matter voluntarily. If you begin repayment of your debt by **08-11-2018** we will halt the Pre-Legal review process. You may call us at **(800) 939-2353**.

Exhibit A.

30.     Exhibit A states that account was transferred to "MCM's Pre-Legal Department," advises the consumer to "review your validation rights," and instructs the consumer to call MCM's Pre-Legal Department on or before August 11, 2018 to resolve the account.

31.     The body in Exhibit A also informs the consumer that "MCM is considering forwarding to an attorney for possible litigation."

32.     The body in Exhibit A further informs the consumer that MCM may forward the account if MCM does not "hear from you or receive payment by 08-11-2018."

33.     On or about July 6, 2018, roughly 10 days after MCM mailed Exhibit A, MCM mailed another debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this Complaint as Exhibit B.

34.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

35.     Upon information and belief, Exhibit B is a form debt collection letter, used by Defendants to attempt to collect alleged debts.

7

36.    Exhibit B was mailed during the thirty-day period triggered by Plaintiff's receipt of Exhibit A.

37.    Exhibit B was received during the thirty-day period triggered by Plaintiff's receipt of Exhibit A.

38.    Exhibit B does not restate or reference the validation notice mailed to Plaintiff in Exhibit A.

39.    The reverse side of Exhibit B contains the following:

> For disputes call (800) 939-2353 or write to:
> Attn: Consumer Support Services
> 2365 Northside Drive
> Suite 300
> San Diego, CA 92108

Exhibit B.

40.    Exhibit B, mailed during the validation period, states that the consumer can effectively dispute the debt by telephone.

41.    The header in Exhibit B contains the following:



Exhibit B.

42.    The header in Exhibit B states, prominently, that Exhibit B is the "FINAL NOTICE."

8

43.     The body in Exhibit B contains the following:

> After numerous attempts to contact you regarding this account, Midland Credit Management, Inc. (MCM) will transition your account into the attorney review process after **08-05-2018**. Call **(800)** 939-2353 now.
>
> If your account is moved to an attorney or legal firm, the MCM Pre-Legal Department will be unable to offer a flexible payment arrangement or stop any potential litigation process. If this process results in litigation, and a judgment is entered against you, the judgment will be enforceable according to state law.
>
> This is the final written communication you will receive prior to entering the legal review process. Your prompt attention is necessary to avoid the possibility of legal action.

Exhibit B.

44.     Although Exhibit A states that MCM would not forward the account to an attorney until August 11, 2018, Exhibit B states that MCM "will transition your account into the attorney review process after" August 5, 2018 roughly a week sooner than the deadline stated in Exhibit A.

45.     Exhibit B further states that, if the account is forwarded to an attorney, the Pre-Legal Department "will be unable to offer a flexible payment arrangement or stop any potential litigation process."

46.     Exhibit B further states that Exhibit B "is the final written communication you will receive prior to entering the legal review process."

47.     The unsophisticated consumer reviewing Exhibit B would understand that "the attorney review process," having her "account moved to an attorney or legal firm," and "the legal review process" all meant the same thing.

48.     On or about August 17, 2018, about 12 days after the August 5, 2018 deadline stated in Exhibit B, MCM mailed a third debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this Complaint as Exhibit C.

9

49. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

50. Upon information and belief, Exhibit C is a form debt collection letter, used by Defendants to attempt to collect alleged debts.

51. The header in Exhibit C states the following:



Exhibit C.

52. Exhibit C, mailed about forty days after Exhibit B (the "FINAL NOTICE"), states that it is the "SECOND NOTICE."

53. Exhibit C also contains the following:

CURRENT STATUS OF YOUR ACCOUNT

We are proceeding with an evaluation of your account and are considering forwarding this account to an attorney in your state for possible litigation. Contact us by calling (800) 939-2353 by 09-12-2018 to resolve this account.

Exhibit C.

54. Although Exhibit B states that Exhibit B is the "final written communication you will receive" before the "account is moved to an attorney or legal firm," Exhibit C – mailed about forty days after Exhibit B and almost two weeks after the deadline stated in Exhibit B – states that MCM is "proceeding with an evaluation of your account and are considering forwarding this account to an attorney in your state for possible litigation."

10

55.   Defendants' representations in <u>Exhibit B</u> and <u>Exhibit C</u> are internally inconsistent and inherently confusing and misleading.

### *<u>Facts Related to Plaintiff's MCM Account Ending in 8145</u>*

56.   On or about April 27, 2018, MCM mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Midland Funding and associated with an MCM Account Number ending in 8145. A copy of this letter is attached to this Complaint as <u>Exhibit D</u>.

57.   Upon information and belief, the alleged debt referenced in <u>Exhibit D</u> was incurred through the use of a "Synchrony Home" credit card, used exclusively for personal, family, and household purposes. <u>Exhibit D</u> seeks to collect a different account than <u>Exhibits A-C</u>.

58.   Upon information and belief, <u>Exhibit D</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

59.   Upon information and belief, <u>Exhibit D</u> is a form debt collection letter, used by Defendants to attempt to collect alleged debts.

60.   Upon information and belief, <u>Exhibit D</u> was the first written communication MCM sent to Plaintiff regarding this alleged debt.

61.   The reverse side of <u>Exhibit D</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid.  If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

<u>Exhibit D</u>.

11

62.     Upon information and belief, Exhibit D was actually mailed on or about April 27, 2018.

63.     On or about April 30, 2018, MCM mailed another debt collection letter to Plaintiff regarding the same alleged debt owed to Midland Funding and associated with an MCM Account Number ending in 8145. A copy of this letter is attached to this Complaint as Exhibit E.

64.     Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

65.     Upon information and belief, Exhibit E is a form debt collection letter, used by Defendants to attempt to collect alleged debts.

66.     Exhibit E is substantially similar in form to Exhibit D.

67.     Like Exhibit D, the reverse side of Exhibit E contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

Exhibit E.

68.     Upon information and belief, Exhibit E was actually mailed on or about April 30, 2018.

69.     The unsophisticated consumer receiving Exhibits D and E within a few days of each other would be confused as to whether the thirty-day validation period began to run from when she received Exhibit D or when she received Exhibit E.

70.     Upon receiving Exhibit E, the unsophisticated consumer would have no way of knowing whether she still had thirty days to dispute the debt.

71.     The consumer has just thirty days after she receives the validation notice to submit a written dispute, which triggers the requirement that the debt collector cease collection activities pending verification. 15 U.S.C. § 1692g(b). "Under section 1692g(b) a consumer must dispute a debt *in writing,* within **an initial thirty-day period**, in order to trigger a debt validation process." *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998) (emphasis in bold added, emphasis in italics in original).

72.     The Seventh Circuit recently adopted the same approach that the First Circuit adopted in *Brady*:

> Section 1692g(b) "confers on consumers the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities." *Brady*, 160 F.3d at 67. . . . If the meaning of "disputed debt" as used in § 1692g(b) carried over to § 1692e(8), then, in order to trigger the limited protection of § 1692e(8), a consumer would be required to submit written notice to a debt collector *within the initial thirty-day period*.

*Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 348 (7th Cir. 2018) (emphasis added) (quoting *Brady*).

73.     Hence, the debt collector provides the validation notice for two reasons. First, the validation notice serves an informational purpose, arming the consumer with the information she needs to determine whether and how she should register a dispute. 15 U.S.C. § 1692g(a); *see Jacobson*, 516 F.3d at 95. Second, the validation notice serves a substantive purpose *for the debt collector*. It initiates the "thirty-day period" after which the debt collector is not required to provide verification of the debt upon the consumer's written dispute.

74.     Once the consumer receives the validation notice – irrespective of when the "initial communication" actually occurred – the thirty-day clock begins ticking. 15 U.S.C. § 1692g(b); *see also, Vayngurt v. Sw. Credit Sys., L.P.*, 2016 U.S. Dist. LEXIS 142680, at *13 (E.D.N.Y. Oct. 14, 2016) ("if the plaintiff waits more than thirty days to attend to the matter, she

13

loses many of her rights under the FDCPA.") (quoting *Harry v. Pentagroup Fin., LLC*, 2007 U.S. Dist. LEXIS 17821, at \*11 (E.D.N.Y. Mar. 14, 2007)).

75.     If the consumer disputes the debt in writing within the thirty-day period, she triggers the statutory protections under § 1692g(b), and the debt collector must cease collection. 15 U.S.C. § 1692g(b). If she does not, she forfeits her statutory right "to demand the cessation of all collection activities." *Evans*, 889 F.3d at 348 (quoting *Brady*, 160 F.3d at 67).

76.     Absolutely nothing in 15 U.S.C. § 1692g or the FDCPA generally requires or even allows a debt collector to extend the validation period or "restart the clock" by mailing a second validation notice.

77.     Even if the debt collector mails a second validation notice, it does not trigger a new "thirty-day period" because the "consumer would be required to submit written notice to a debt collector within the initial thirty day period," *Evans*, 889 F.3d at 348, which is triggered by the validation notice triggered by the "initial communication." 15 U.S.C. §§ 1692g(a)(3)-(5) (debt collector must provide notice of thirty-day validation period "[w]ithin five days after the *initial communication* ….") (emphasis added) and 1692g(b) ("If the consumer notifies the debt collector in writing *within the thirty-day period described in subsection (a)* ….") (emphasis added).

78.     As several courts have observed, "[u]nder its ordinary meaning, 'there can only be *one* "initial communication" between a debt collector and a consumer, and any communication that follows the "initial communication" is necessarily *not* an "initial" communication.'" *Dorsey v. Schumacher*, 2015 U.S. Dist. LEXIS 16580, at \*7 (D. Or. Feb. 11, 2015) (quoting *Derisme v. Hunt Leibert Jacobson, PC*, 2010 U.S. Dist. LEXIS 119351, 2010 WL 4683916, at \*5 (D. Conn. Nov. 10, 2010)) (emphasis in original).

14

79.     The debt collector may, of course, ***choose*** to validate a debt even if the consumer does not trigger her rights under § 1692g(b), but doing so does not absolve the debt collector of liability for misinforming the consumer as to when the statutory protections cease. *See McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

80.     As long as the debt collector is not required to provide verification, it cannot be liable under § 1692g(b) for providing inadequate verification or continuing to collect the debt while verification is pending. *Id.*; *see also Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cir. 2014) (debt collector was liable under § 1692g(b) for continuing to collect after providing inadequate verification).

81.     The "ultimate power" conferred by § 1692g(b) is not simply triggering verification, it is requiring the debt collector to cease collecting pending verification. *Evans*, 2018 U.S. App. LEXIS 11372, at *16; *Brady*, 160 F.3d at 67; *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013). A debt collector voluntarily validating the debt could indefinitely continue or even ramp up its collection efforts while it was "preparing" verification in the hopes that the consumer would pay the debt in the meantime. *See, e.g., Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, at *6-9 (D. Haw. Aug. 16, 1990); *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) (explaining that, "[i]n *Bailey*, the court held that, when a consumer first paid the debt and then *timely requested verification* of the debt, the debt collector violated the FDCPA by failing to provide such verification and keeping the consumer's payment.") (emphasis added).

15

82.     To ensure the consumer does not inadvertently forfeit this "ultimate power," the FDCPA requires that debt collectors disclose the information the consumer needs---the amount of the debt, the name of the creditor to whom the debt is owed, and notice of the consumers' rights to dispute the debt---in a non-confusing manner. *E.g., Chuway*, 362 F.3d at 949 (amount of the debt must be clear); *Janetos*, 825 F.3d at 323 (name of the creditor must be clear); *Bartlett*, 128 F.3d at 500-01 (effect of disputing the debt must be clear); *Chauncey*, 118 F.3d at 519 (length of the validation period must be clear).

83.     Following the Seventh Circuit and courts throughout the country, Congress amended the FDCPA to expressly prohibit communication that overshadows, conflicts with, or confuses the disclosure of the consumer's dispute rights. 15 U.S.C. § 1692g(b); *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635 n.1 (7th Cir. 2012).

84.     A follow-up collection letter that falsely states the amount of time remaining in the validation period violates § 1692g(b). In *Durkin*, the Seventh Circuit noted that a follow-up collection letter that contradicts the validation notice in the initial collection letter would violate the FDCPA as a matter of law:

> [T]he matter turns on whether the specific text contains any impermissible overshadowing or contradiction with respect to the validation notice.
>
> …
>
> For instance, these letters do not indicate that the time for disputing the debt has passed. Nor do they misrepresent or cloud the amount of time remaining to dispute the debt.

*Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417 (7th Cir. 2005) (citations omitted).

85.     A debt collector who chooses to "reiterate the safe-harbor validation notice … and the time remaining in that period[,]" must do so in a way that does not "misrepresent or cloud the amount of time remaining" in the validation period. *Id.* at 417.

16

86.     The FDCPA forbids debt collectors from overstating the length of the validation period as well as understating it. *Durkin*, 406 F.3d at 417 (a collection letter overshadows the validation notice if it "misrepresent[s] or cloud[s] the amount of time remaining to dispute the debt.").

87.     Defendants are a high-volume debt collector that purchases portfolios of debts, which may include more than one debt for any individual consumer.

88.     The unsophisticated consumer, receiving Exhibits D & E in close succession may wonder whether she had received some validation notice *prior* to Exhibit D and may wonder whether the validation period may even have already ended.

89.     Plaintiff was confused and misled by Exhibits A-E.

90.     The unsophisticated consumer would be confused, misled, and deceived by Exhibits A-E.

### The FDCPA

91.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads

a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created

18

a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

92.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

93.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

94.     15 U.S.C. § 1692e(5) specifically prohibits the "threat to take any action which cannot be taken or which is not intended to be taken."

95.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

96.     15 U.S.C. § 1692g requires that debt collectors make certain disclosures, that these disclosures must be made in a non-confusing manner, and that debt collectors may not

19

communicate or engage in conduct that overshadows or contradicts these disclosures. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 319 (7th Cir. 2016).

97.    15 U.S.C. § 1692g(a)(3) requires that debt collectors disclose that, "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."

98.    15 U.S.C. § 1692g(a)(4) requires that debt collectors disclose that "if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment and a copy of such verification or judgment will be mailed to the consumer by the debt collector."

99.    15 U.S.C. § 1692g(a)(5) requires that debt collectors disclose that, "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

## <u>COUNT I – FDCPA</u>

100.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

101.    <u>Exhibit B</u>, mailed during the validation period triggered by Plaintiff's receipt of <u>Exhibit A</u>, instructs the consumer that she may effectively dispute the debt by phone.

102.    By encouraging consumers to call MCM with any disputes, <u>Exhibit B</u> does not inform the consumer that, in order to invoke his or her right to obtain verification of the debt or request the name and address of the original creditor under 15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5), the consumer must make the request in writing.

20

103.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT II – FDCPA

104.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

105.     Exhibit A states that it is an "INITIAL NOTICE" that Defendants may refer the debt to an attorney unless the consumer responds on or before August 11, 2018.

106.     Exhibit B states that it is a "FINAL NOTICE" that Defendants will refer the debt to an attorney unless the consumer responds on or before August 5, 2018.

107.     Exhibit C, mailed on or about August 17, 2018, states a new deadline pursuant to which Defendants may refer the account to an attorney.

108.     The sequence of letters in the form of Exhibits A, B, & C is plainly confusing and misleading to the unsophisticated consumer, who would feel intimidated, threatened, and tricked by the reference to Exhibit B being a "FINAL NOTICE" before Defendants would refer the account to an attorney to commence litigation.

109.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## COUNT III – FDCPA

110.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

111.     Exhibit D states that the validation period will run for thirty days from the consumer's receipt of Exhibit D.

112.     Exhibit E, mailed several days after Exhibit D, states that the validation period will run for thirty days from the consumer's receipt of Exhibit E.

113. The unsophisticated consumer would be confused as to the actual beginning and end of the validation period.

114. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g(3), 1692g(4), 1692g(5), and 1692g(b).

## CLASS ALLEGATIONS

115. Plaintiff brings this action on behalf of two Classes.

116. Class I (the "FINAL NOTICE Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a series of collection letters in the form represented by Exhibits A-C to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes (d) between April 23, 2018, and April 23, 2019 inclusive (e) where none of the letters was returned by the postal service.

117. Class II (the "TWO VALIDATION NOTICE Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a series of collection letters in the form represented by Exhibits D and E to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes (d) between April 23, 2018, and April 23, 2019, inclusive (e) where Exhibit E was mailed fewer than thirty days after Exhibit D was mailed, and (f) neither letter was returned by the postal service.

118. Each Class is so numerous that joinder is impracticable.

119. Upon information and belief, there are more than 50 members of each Class.

120. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A- E violate the FDCPA.

121.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

122.     Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

123.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

124.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated: April 23, 2019

ADEMI & O'REILLY, LLP

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com